## Thurmond v. Nashville, C. & St. L. Ry.

March 26, 1943.

R. Hall Hood for appellant.

Joe Lancaster and Walton Whitwell for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Appellant, who was engaged in the business of corn shelling, sued appellee, alleging that on July 25, 1941, about 11:30 o'clock A. M., appellee "operated its engine and equipment in a negligent and careless manner" over a spur track leading from its main track, through appellant's business property, so as "to permit sparks of fire to pass from said engine, fire box, or other portion of said machine or equipment and pass out and on to the property of this plaintiff which did then and there result in setting fire to, burning and destroying property

belonging to the plaintiff, to plaintiff's loss and damage in the sum of $1,750.00.'' Appellee traversed the material allegations of the petition and pleaded certain provisions of a written contract between the parties, by which, ''for the more economical and convenient conduct'' of appellant's business, appellee agreed to ''serve'' appellant over a previously constructed spur track. One of these provisions (the only one we deem it necessary to quote, since the Court on appellee's motion struck the others from the answer) read as follows:

> ''The Industry (appellant) expressly agrees to permit no trash or rubbish to accumulate on or about said industrial track or premises or to create or permit the existence of any condition making operation on said industrial track unsafe or perilous, and it is agreed that the Railway shall be under no obligation to operate or switch on said industrial track when to do so is in its opinion dangerous.''

Alleging among other things that appellant had violated the quoted provision by knowingly and negligently permitting large quantities of shucks and other inflammable materials to accumulate and remain upon and near the track and between the track and the buildings which burned, appellee pleaded in bar of the action appellant's ''contributory, concurring, and contemporaneous negligence in the management of its business.'' It is unnecessary to set forth further details of the pleadings, since the controlling issues are thus indicated. It is sufficient in this connection to say that after the issues had been joined and the evidence for appellant heard, the Court directed the jury to return a verdict for appellee, and that this appeal is from the judgment entered upon that verdict.

A large portion of appellant's brief is devoted to an attack upon the validity of the contract by means of which he had obtained switching service; but we are unable to perceive any vice in the provision which we have quoted. Whatever may be the limitations imposed by Section 196 of the Constitution upon a carrier's right to contract against its common law liability for negligence, we know of no rule of law which prohibits a property owner from agreeing with a carrier, as an inducement to it to furnish him service over a spur track extending through his property, to refrain from the commission of acts which would make the operation unsafe

or perilous. Appellant's argument that he was compelled to sign the agreement in order to obtain the desired service is irrelevant for the same reason. Moreover, there was neither allegation nor proof of duress. Likewise irrelevant is the fact that the engine which emitted the cinders was not serving appellant's industry, but another industry located on the spur track some distance beyond. We therefore are of the opinion that only two material questions are presented, namely: Whether the testimony for appellant showed that appellee was guilty of actionable negligence which caused the fire; and, if so, whether it disclosed a violation by appellant of the quoted provision of his contract, but for which the fire would not have occurred.

Appellant's proof was to the effect that there was a low or sunken place in the spur track which rendered it difficult for the engine to ascend the grade, and caused it to emit live cinders in so doing; that on the morning of the fire the engine labored excessively, and "belched" large quantities of fire from the smokestack; and that shortly thereafter the buildings caught fire. Thus appellant established a prima facie case of negligence against appellee; and the answer to the second of the two questions which we have designated as material becomes controlling. Unfortunately for appellant, we must also answer that question in the affirmative.

The buildings which burned were situated within 20 feet of the track, and all of the witnesses who testified as to the origin of the fire stated that it started in the "shucks" accumulated in the space between the buildings and the track, and spread from there to the buildings. Appellant testified that no corn had been shelled that day, but admitted that on the previous day the shucks had caught fire. Relative to the care used to keep the shucks from accumulating between the buildings and the track, he said that he kept the shucks raked up and burned, but was unable to state that they had been so disposed of on the day of the fire. On this subject, one of the employees of appellant testified that he had the shucks "raked back away from the track the day before, or the day before that, they caught fire there by the track and I raked the shucks back." From the testimony offered by appellant the conclusion is inescapable that he and his employees were fully aware of the fire peril created by the accumulation of corn shucks

near the track; that notwithstanding this knowledge, the shucks had been permitted to so accumulate; and that the fire originated in the shucks near the track and spread from there to the buildings. Clearly appellant's violation of the quoted provision of his contract constituted contributory negligence but for which the loss of his buildings would not have occurred.

Judgment affirmed.